# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL F. AVALOS,<br><br>  Plaintiff,<br><br>v.<br><br>CARPENTER,<br><br>  Defendant. | Case No. 1:15-cv-00369-LJO-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMMARY JUDGMENT**<br><br>**(Doc. 42)**<br><br>**OBJECTIONS DUE WITHIN 21 DAYS** |

**I.     Background**

Plaintiff claims that, in deliberate indifference to his safety, at a time when all inmates were to be escorted due to recent stabbing, Defendant knowingly opened cell doors and simultaneously allowed Plaintiff and other inmates out of their cells without escort, which resulted in Plaintiff being attacked. Defendant filed a motion for summary judgment and contends that he was in the control tower and opened cells only when floor officers instructed it was safe to do so, that he had no knowledge of an excessive risk of harm to Plaintiff by his actions that day, and that Plaintiff is not entitled to recover compensatory damages as he was not physically injured in the incident and his only remain claim is for emotional distress. Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment in an order filed on June 7, 2017. *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 2626912 (9th Cir. Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v.*

1

*Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). That notice warned Plaintiff that his failure to file an opposition or a statement of non-opposition to Defendant's motion could result in dismissal for failure to prosecute and that his failure to contradict Defendant's motion with declarations or other evidence would result in Defendant's evidence being taken as truth upon which final judgment may be entered. (Doc. 43.) Despite lapse of more than a month beyond the allowed time, Plaintiff filed neither an opposition nor a statement of opposition to Defendant's motion. For the reasons discussed below, the Court finds that Defendant's motion reveals a lack of genuine issue of material fact and demonstrates the motion should be **GRANTED**.

**II.     Plaintiff's Claim**

Plaintiff alleged that as of January 30, 2014, while he was housed at the Substance Abuse Treatment Facility, a prison memorandum/matrix was in effect that restricted inmate movement other than under escort and D-yard facility was on lockdown because of a stabbing. (Doc. 1, p. 3.) Despite this, on that date, the doors to his cell and those of a few other inmates were opened and they were simultaneously released unrestrained to the common area. (*Id.*) As a result, Plaintiff was attacked and injured. (*Id.*)

**III.    Summary Judgment Standard**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

A defendant does not bear the burden of proof at trial and, in moving for summary judgment, need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If a defendant meets this initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make

credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Where, as here, the opposing party fails to file an opposition, a district court may not grant a motion for summary judgment solely on this basis. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir.1994). However, an unopposed motion for summary judgment may be granted if the movant's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1519-20 (9th Cir.1995) (holding local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed.R.Civ.P. 56), *rev'd on other grounds sub nom. Degen v. United States*, 517 U.S. 820 (1996).

## IV. Discussion and Analysis

### A. Eighth Amendment Standards

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)).

To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citing

*Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). This involves both objective and subjective components.

First, objectively, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847; *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002) ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.").

**B.     Defendant's Motion**

Defendant's evidence shows that the events upon which Plaintiff's claim is based, occurred on January 30, 2014. (UF No. 3.) Plaintiff and the other inmate involved were outside of their cells at the time. (UF No. 4.) The other inmate walked towards Plaintiff and Plaintiff backed up. (UF No. 5.) When the other inmate was about five feet away, Plaintiff claims that he feared he was going to be attacked, so he hugged the other inmate. (UF No. 6.) The initial physical contact that Plaintiff had with the inmate was when Plaintiff hugged and wrapped his arms around the other inmate. (UF No. 7.) No punching or fist fighting occurred in this altercation. (UF No. 8.) Plaintiff and the other inmate wrestled and went to the floor. (UF No. 9.) Plaintiff continued to hug the other inmate until both were pepper sprayed. (UF No. 10.) During the incident Plaintiff does not recall that he was ever struck by the other inmate. (UF No. 11.) Once pepper sprayed, Plaintiff and the other inmate stopped fighting and "proned out." (UF No. 12.) Plaintiff was thereafter cuffed and escorted to the yard. (UF No. 13.)

| | |
|---|---|
| 1 | Plaintiff is not claiming that he suffered any physical injuries as a result of the incident; |
| 2 | rather, he claims he suffered mental damage, underwent psychological evaluations, and suffered |
| 3 | reddened areas on his face which went away after one day.  (UF Nos. 2, 14, 17.)  Plaintiff was |
| 4 | allowed to wash off the pepper spray, but was not treated for any injuries and did not receive any |
| 5 | medication.  (UF No. 15.)  Plaintiff did not suffer any ill effects from the pepper spray.  (UF No. |
| 6 | 16.) |


     Plaintiff is not claiming that he suffered any physical injuries as a result of the incident; rather, he claims he suffered mental damage, underwent psychological evaluations, and suffered reddened areas on his face which went away after one day.  (UF Nos. 2, 14, 17.)  Plaintiff was allowed to wash off the pepper spray, but was not treated for any injuries and did not receive any medication.  (UF No. 15.)  Plaintiff did not suffer any ill effects from the pepper spray.  (UF No. 16.)

     On the date of the incident, Defendant was working as the D5 Control Officer at SATF.  (UF No. 18.)  He had worked as a Control Officer numerous times during his tenure with CDCR.  (UF No. 19.)  Part of this job entailed opening and closing the doors to inmate cells in his area via a remote, electronic, mechanical system.  (UF No. 20.)  Defendant was situated in a Control Tower above the prison floors.  (UF No. 21.)

     Defendant recalls that this area was on lockdown on January 30, 2014, but not all inmates were subject to the same restrictions -- some inmate critical workers and some inmates in need of medical care were not locked down or required to be restrained.  (UF No. 22.)  The protocol under these circumstances required correctional officers on the floor to determine when it was safe to open one or more cell doors.  (UF No. 23.)  They made this decision based on the circumstances of which they were aware at the time.  (UF No. 24.)  Defendant relied upon them to make the decision as to which doors should be opened and when.  (UF No. 25.)  The floor officers would signal Defendant when a door was to be opened.  (UF No. 26.)

     When cell doors were opened around 8:30 a.m. on January 30, 2014, the floor officers provided a signal notifying Defendant which cell doors to open and when.  (UF No. 27.)  In following those directions, Defendant was not aware of any substantial risk of serious harm to Plaintiff, or any other inmate.  (UF No. 28.)  Defendant was not aware and did not suspect that there was a substantial risk that inmates would start fighting with each other when he opened the cell doors.  (UF No. 29.)

     Prior to January 30, 2014, Defendant had very limited interaction with Plaintiff.  (UF No. 30.)  They had no prior dealings which created any animosity, conflicts, disputes, arguments, etc.

(UF No. 31.) There was no "bad blood" between them and Defendant had no reason to want to harm Plaintiff or make trouble for him. (UF No. 32.) Defendant had no intent to create a situation where Plaintiff, or any inmates, would likely get into fights. (UF No. 33.)

Plaintiff is claiming in his complaint that the alleged excessive risk of harm to him was the opening of cell doors without escorts for the inmates which allowed them to roam freely within the prison thereby making it likely that Plaintiff would be attacked by another inmate. (UF No. 34.) Plaintiff is not claiming that he had any prior relationship with the inmate attacked him and did not know who the other inmate was. (UF No. 35.) Plaintiff also does not allege that any particular group or gang had threatened to harm him. (UF No. 36.) Defendant was not aware of any relationship or animosity between Plaintiff and the other inmate involved in the altercation, nor was he aware of any threats of violence made by either to the other. (UF No. 37.) Defendant did not suspect that any inmates would assault other inmates if they were allowed outside their cells unrestrained, let alone Plaintiff and the other inmate involved. (UF No. 38.)

Defendant correctly contends that under *Farmer* and *Simmons v. Lamarque*, 2007 WL 2177339 (N.D. Cal. 2007), *aff'd*, 412 F. App'x 958 (9th Cir. 2011), there is no basis for Plaintiff's deliberate indifference claim. Plaintiff alleges an excessive threat existed because there was a lockdown and inmates were allowed to walk outside of their cells without escorts, but this is insufficient to support this claim. Defendant shows that there is no evidence indicating any likelihood that the other inmate would attack Plaintiff on the date in question. Defendant also shows that even if there had been an excessive risk that Plaintiff would be attacked, the facts of which Defendant was actually aware justifiably did not raise any suspicion. When Defendant was told by the floor officers to open the doors, he relied upon the officers' expertise that the circumstances were such that no risk would be created by opening them. Further, Plaintiff and the other inmate had no prior history and Defendant was aware of no facts which would raise a suspicion that one of them might attack the other. Finally, Defendant's evidence shows that he never actually had such a suspicion. *Gibson*, 290 F.3d at 1188.

The Court finds that Defendant has met the burden to demonstrate the absence of a

genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita,* 475 U.S. at 586. To this end, however, Plaintiff's deposition testimony, cited by Defendants, overrides his allegations in the complaint to the contrary. Plaintiff's general and conclusory allegations in the complaint were very liberally construed in his favor to state a cognizable claim. However, on summary judgment they do not suffice to create a triable issue of fact that Defendant was aware of a substantial risk of serious harm to Plaintiff on January 30, 2014, which he disregarded and failed to take reasonable measures to abate. *Farmer*, 511 U.S. at 847. A court may refuse to find a "genuine issue as to a material fact where the only evidence presented is uncorroborated and self-serving testimony." *Manley v. Rowley*, 847 F.3d 705, 710-11 (9th Cir. 2017) (internal quotations and citations omitted). Plaintiff's allegations in the complaint are akin to self-serving testimony which the Court is permitted to discount since the complaint largely states conclusions and provides few facts that would be admissible evidence. *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015).

Further, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code)." 42 U.S.C. § 1997e(e). Defendant's evidence shows that Plaintiff does not seek damages in this action for any physical injury he sustained in the altercation on January 30, 2014. Plaintiff may not solely pursue damages for mental or emotional injury. Thus, the Court finds that Defendant's motion for summary judgment should be **GRANTED** on the merits of Plaintiff's claim.

### V. Conclusions and Recommendations

As set forth herein, this Court finds that Defendant's motion for summary judgment should be granted. Accordingly, the Court **RECOMMENDS**:

(1) that Defendant Carpenter is entitled to judgment as a matter of law such that the Motion for Summary Judgment, filed on June 2, 2017 (Doc. 42), should be

| | |
|---|---|
| 1 | **GRANTED**; and |
| 2 | (2) that the Clerk of the Court be directed to enter judgment against Plaintiff and in favor of Defendant Carpenter, and that this action be closed. |

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 24, 2017**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE